[Civ. No. 57438. Second Dist., Div. One. May 13, 1980.]

MARILYN ISABEL SCHREIBER et al., Plaintiffs
and Respondents, v.
DITCH ROAD INVESTORS, Defendant;
BANK OF AMERICA, Intervener and Appellant;
HOFFMAN, VANCE & WORTHINGTON, as Receiver, etc.,
Defendant and Respondent.

COUNSEL

George W. Coombe, Jr., Ralph M. Abee and Pauline M. Stevens for Intervener and Appellant.

Marshall, Lowthorp, Richards & Hibbs and Harry R. Hibbs for Plaintiffs and Respondents.

Nordman, Cormany, Hair & Compton and Gary D. Arnold for Defendant and Respondent.

OPINION

LILLIE, J.—(1), ■ ■■■■ In an action to enforce the provisions of a deed of trust assigning rents, issues and profits to plaintiffs as additional security, the intervener appeals from an order approving the final account of a receiver and dismissing as moot the complaint and the complaint in intervention.[1]

The complaint, filed April 24, 1975, alleged: In October 1972 plaintiffs sold farm property in Ventura County to defendant. At the time of the sale defendant executed a promissory note in the principal sum of $720,000 secured by a deed of trust in favor of plaintiffs. The deed of trust contained provisions assigning to plaintiffs all rents, issues and profits of the property and binding defendant to farm and care for the property. Defendant has defaulted in its obligation under the note and the deed of trust. The complaint sought an order appointing a receiver to take possession of the property, conserve and manage it, and collect all rents, issues and profits from it. Defendant did not appear and its default was entered. On May 9, 1975, the Bank of America filed a complaint in intervention alleging: by virtue of security agreements executed by defendant in its favor, intervener has a security interest in the crops growing on the property which is the subject of the deed of trust; intervener perfected its security interest by filing financing statements

---

[1]An order dismissing a complaint in intervention is final as to the intervener and hence is appealable. (*Stern & Goodman Inv. Co. v. Danziger* (1929) 206 Cal. 456, 457 [274 P. 748].) An order approving a receiver's account is appealable as a final judgment determining matters which are collateral to the main action. (*Macmorris Sales Corp. v. Kozak* (1967) 249 Cal.App.2d 998, 1001-1002 [58 Cal.Rptr. 92]; *Brown v. Memorial Nat. Home Foundation* (1958) 158 Cal.App.2d 448, 458 [322 P.2d 600].)

pursuant to the Uniform Commercial Code; defendant has defaulted in its payment of the promissory notes secured by the security agreements and owes intervener a total of $80,013.64 on the notes. Intervener sought judgment determining that its security interest in the crops is prior to plaintiffs' security interest therein under the deed of trust.

On May 9, 1975, with intervener's consent, the court made an order appointing a receiver. The order directed the receiver to take possession of the property, to care for, preserve and maintain it, and to incur the expense necessary for such care, preservation and maintenance. In connection with the operation of the property, the receiver was authorized "to do all things and to incur the risk and obligations ordinarily incurred by owners, managers and operators of similar businesses and enterprises." The receiver was further authorized to harvest and market the existing crops on the property and any other crops which might subsequently mature during the term of the receivership. The order directed that moneys coming into the receiver's possession and not expended for the operation, preservation and maintenance of the property were to be held by the receiver subject to disposition by the court. It concluded with the following provision, inserted at intervener's request: "Nothing in this order shall be construed as a determination as to which party will be charged with the costs of cultivation and maintenance incurred by the receiver."

On December 4, 1975, pursuant to the power of sale in the deed of trust, the trustee thereunder sold the property to plaintiffs for the amount of the debt secured by the deed of trust; on December 17, the trustee's deed was recorded conveying title to plaintiffs. On plaintiffs' motion the court, by order dated February 11, 1976, directed the receiver to return possession of the property to plaintiffs. The order further directed the receiver to retain possession of all crops grown on the property, and the proceeds thereof, pending determination of the respective rights of plaintiffs and intervener in such crops and proceeds.

On January 16, 1978, the receiver filed its final account which showed that it collected $59,575.80 for sale of the crop and disbursed $59,320.35 for maintenance of the property, for harvesting and marketing the crop, and for payment of real property taxes. The account further showed: on February 11, 1976, the receiver had $255.45 cash on hand; thereafter it incurred additional expenses of $1,751.95 for bond

premiums and attorney fees,[2] leaving it with a cash deficit of $1,549.50 as of January 12, 1978. In its account, the receiver requested that the fees of its attorneys be charged to the appropriate party as determined by the court.

After the filing of the final account, intervener moved for an order authorizing it to sue the receiver on the ground that the receiver had disbursed the crop proceeds in disregard of intervener's claimed security interest; the motion was denied. Intervener filed objections to the account on the same ground. On January 12, 1979, following a hearing, the court made an order approving the account, directing plaintiffs pay the attorney fees of receiver's counsel, discharging the receiver, and dismissing with prejudice the complaint and the complaint in intervention on the ground that "this order renders all remaining issues between plaintiffs and intervenor moot." Intervener appeals from that order.

■ Relying on the rule that a receiver takes control of property subject to the interests therein which existed before his appointment (*California National Bank* v. *El Dorado Lime & Minerals Co.* (1931) 213 Cal. 494, 496 [2 P.2d 785]; *Allen* v. *Ramsay* (1960) 179 Cal. App.2d 843, 854 [4 Cal.Rptr. 575]), appellant contends that the trial court erred in giving precedence to the costs of the receivership over appellant's security interest in the crop. The contention is without merit. "Expenditures incurred by a receiver with the consent of lienholders may be paid ahead of the lien. Accordingly, where a receiver is lawfully appointed at the instance and for the benefit of lien creditors, all proper charges, expenses, and liabilities incurred as incident to duly conferred receivership powers and duties are a charge on the earnings and corpus of the property superior to the lien creditors, who take part in, or expressly or impliedly consent to, or acquiesce in, the receivership proceedings....Similarly, the expenses of the operation of a business are prior to the claims of lienors, who have acquiesced in, agreed to, and consented to, the appointment of a receiver and operation of the business by him, although they have not actively procured the appointment, or who, while not the applicants on whose petition the receiver is appointed, are privy to the action which results in the appointment." (75 C.J.S., Receivers, § 292, pp. 933-934. See also *South County Sand & G. Co.* v. *Bituminous Pavers Co.* (1971) 108 R.I. 239 [274 A.2d 427, 430]; *National Surety Corp.* v. *Sharpe* (1952) 236 N.C. 35 [72 S.E.2d 109, 129]; *United Bonded Warehouse* v. *Jackson* (1951) 208 Ga. 552

---

[2]On November 15, 1977, the court granted the receiver's application for authority to employ attorneys to prepare and submit its account and to resist intervener's anticipated objections to the account.

[67 S.E.2d 761, 763]; *Community State Bank* v. *Norman* (1948) 119 Ind.App.82 [82 N.E.2d 705, 708]; *Colorado Wool Marketing Assn.* v. *Monaghan* (10th Cir. 1933) 66 F.2d 313, 315.)

As an intervener claiming a security interest in the property, appellant could have opposed the appointment of the receiver and appealed from the order of appointment. (Code Civ. Proc., § 904.1, subd. (g); *First Nat. Bank* v. *Superior Court* (1909) 12 Cal.App. 335, 347 [107 P. 322]; 55 Cal.Jur.3d, Receivers, § 23, p. 30.) Instead of pursuing that course appellant, with knowledge of the powers conferred on the receiver, consented to and acquiesced in the appointment, thereby availing itself of the receivership as a means of enforcing its security interest in the crop. Only after the receiver filed its final account did appellant seek to sue the receiver on the ground that it had improperly expended the proceeds of the crop sale in disregard of appellant's security interest. This attempted assertion by appellant of the priority of its lien over the expenses of the receivership came too late. Appellant, having consented to the receivership, also impliedly consented that the operating expenses thereof be given priority over its security interest. The fact that the receivership proved in retrospect to be of no benefit to appellant does not affect the priority of the receivership expenses over appellant's security interest.

Appellant contends that the real property taxes paid by the receiver were not an operating expense of the receivership, and hence could not properly be charged against the funds in the hands of the receiver. The contention is without merit. ■ Receivers are obligated to pay all taxes on real property in their possession which fall due during the time they are in possession as receivers. (75 C.J.S., Receivers, § 179, pp. 825-826; *Prudential Ins. Co.* v. *Liberdar Holding Corp.* (2d Cir. 1934) 74 F.2d 50, 52.) "This is not because such taxes are debts of the insolvent or the trust estate or because the receivers have assumed the obligations of the mortgagor to pay taxes upon the mortgaged premises, but because the receivers are operating the property, and current taxes are to be regarded as ordinary expenses of operation."[3] (*Hennepin*

[3]The rule is otherwise where the taxes accrued on the property before the receiver took possession of it. Thus, in *United States* v. *Giragossiantz* (9th Cir. 1973) 488 F.2d 358, cited by appellant, it was held that the receiver was not entitled to credits for taxes paid by him to redeem from tax sales the real property subject to receivership, such taxes having been paid for the benefit of the owner of the trust deed on the property.

On the basis of the record herein, it is impossible to determine whether any portion of the real property taxes paid by the receiver accrued before it took possession of the property.

*County, Minn.* v. *M. W. Savage Factories* (8th Cir. 1936) 83 F.2d 453, 455, cert. den. *sub nom. M. W. Savage Factories, Inc.* v. *Hennepin County* (1936) 299 U.S. 555 [81 L.Ed. 408, 57 S.Ct. 16].) A receiver is required to pay the full amount of any taxes which fall due during the period of his possession of the property taxed, without any prorating based on the proportion between the period of possession and the period covered by the taxes. (*Prudential Ins. Co.* v. *Liberdar Holding Corp., supra,* 74 F.2d at p. 52.) In the present case the receiver, in December 1975, paid real property taxes for 1975-1976 totaling $21,613.53. Inasmuch as such taxes fell due during the period of the receivership (May 9, 1975-Feb. 11, 1976), the entire amount thereof properly was allowed as an operating expense of the receivership.

The receiver requests an award of attorney fees for defending the appeal. The trial court granted receiver's application for an order authorizing it to employ attorneys for the purpose of representing it "with regard to the final accounting, any objections thereto, and any related matters pertaining to the disposition of the proceeds of the receivership estate." Pursuant to its authority to order payment of the fees of counsel for the receiver (*Maggiora* v. *Palo Alto Inn, Inc.* (1967) 249 Cal.App.2d 706, 713 [57 Cal.Rptr. 787]), the court, in its order of January 12, 1979, directed plaintiffs to pay such fees for services of receiver's attorneys rendered through October 30, 1978 (the date of the hearing on objections to receiver's final account). That order is silent regarding an allowance of fees to receiver's attorneys for their services in the event of an appeal; however, the minute order which was the basis for the formal order of January 12, 1979, stated: "except as herein specifically allowed and ordered, no allowance or award of attorney's fees to any party or to the receiver is allowed or ordered to be paid." Although this court may make an award of fees for the services of a receiver's counsel rendered on appeal (*People* v. *Riverside University* (1973) 35 Cal.App.3d 572, 587 [111 Cal.Rptr. 68]), we are not disposed to do so here. Accordingly, receiver's request for an award of such fees is denied.

The order of January 12, 1979, is affirmed.

Jefferson (Bernard), P. J., and Hanson (Thaxton), J., concurred.