UNITED STATES of America,
Appellant,

v.

Scott W. ALLEN, Jr., et al., Appellees.

No. 20607.

United States Court of Appeals
Fifth Circuit.

Feb. 25, 1964.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Tax Div., Dept. of Justice, Washington, D. C., Charles L. Goodson, U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., Joseph Kovner, George F. Lynch, Attys., Tax Div., Dept. of Justice, Washington, D. C., Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., for appellant.

Harold Karp, Newell Edenfield, Edenfield, Heyman & Sizemore, Atlanta, Ga., for appellees.

Before TUTTLE, Chief Judge, JONES, Circuit Judge, and JOHNSON, District Judge.

JONES, Circuit Judge.

The Internal Revenue Service of the United States made assessments against the appellee, Scott W. Allen, Jr., and Frances Allen, his wife, for $270,066.13, and against the appellee individually for $155,819.92, plus interest. Scott W. Allen, Jr., was a beneficiary of the estate of his mother in the amount of $40,000.00, or more. The Fulton National Bank of Atlanta, Georgia, is the executor of the mother's estate. On June 9, 1960, a bill of complaint for the appointment of a receiver of the assets of Scott W. Allen, Jr., was filed in the Superior Court of Fulton County, Georgia. On May 17, 1961, the District Director of Internal Revenue caused a Notice of Levy to be served on the Fulton National Bank demanding the surrender of all property belonging to the Allens,

and this was followed by a further and more specific demand on November 8, 1963. The Fulton County Superior Court, on January 29, 1962, appointed Thomas E. Moran as Receiver of the assets of Scott W. Allen, Jr., in the proceeding which had been commenced on June 9, 1960. The United States, on November 28, 1962, brought suit against the Allens, against Moran as Receiver, and against the Fulton National Bank, as Executor. By its complaint the United States sought personal judgments against the Allens, asserted a lien on the funds held by the Fulton National Bank, and prayed for the foreclosure of the lien against the defendants. The court entered a temporary restraining order enjoining the bank from making any transfer of the fund held by it until the further order of the court.

Moran, as Receiver, answered and asserted that the fund in the possession of the Bank came into the constructive custody of the Receiver upon the filing of the receivership bill which was prior to the levy of the United States. Moran, the Receiver, filed a motion asking that the complaint be dismissed as to him, that the restraining order be dissolved, and that the Bank turn over to him the fund in its possession. The court entered an order in which it was stated that the court was "of the opinion that the appointment of a receiver in the state court proceeding, whenever such appointment was made, relates back to the filing of the original bill and that the assets in question were, therefore, already in the constructive custody of the state court when the Government's levy attached." The court adjudged (1) that as between it and the state court, the state court had jurisdiction to administer the fund of Scott W. Allen held by the Fulton Bank, (2) that it had jurisdiction to proceed with the case to determine the amount of the Government's claim against Scott W. Allen, and to foreclose its lien against him, (3) that the priorities of Allen's creditors, including the Government, were to be determined by the state court.

The order dismissed the action as to the Receiver and provided for its continuance for the stated purposes against the other defendants. The order was entered on February 6, 1963. On March 13, 1963, another order was entered which amended the earlier order by adding thereto the following, "The application of the United States for preliminary injunction is hereby denied and the restraining order heretofore granted in said cause is hereby dissolved." On the same day, March 13, 1963, the United States gave notice of its appeal "from the Order of February 6, 1963, as amended March 13, 1963, entered herein denying the preliminary injunction * * * and dissolving the temporary injunction entered November 28, 1962, and continued by agreement of the parties."

The United States assails the district court's determination that the right of the state court receiver to possess and administer the legacy of Allen became effective, by the application of the doctrine of relation back, to the institution of the state court suit. The time of the actual appointment is held in some jurisdictions to be the effective date, while in other jurisdictions the relation-back principle is applied. 45 Am.Jur. 120, 121, Receivers § 142. The appellees put Georgia in the latter group and to support their position they cite Merchants' & Planters' National Bank v. Trustees of Masonic Hall, 63 Ga. 549; May v. Printup, 59 Ga. 128; and Patterson v. Veasey, D.C.N.D.Ga.1924, 295 F. 163. The Supreme Court has applied the principle of relation back in this area but restricted its application to situations where the two suits have a common purpose and the courts have concurrent jurisdiction. Penn General Casualty Co. v. Pennsylvania ex rel. Schnader, Attorney General, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850. There is not a common purpose in a creditor's bill receivership and a federal tax levy.

It is not to be doubted that where a state court first acquires jurisdiction of the res, the federal courts are

disabled from exercising any power over it. Toucey v. New York Life Insurance Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100. If the federal tax levy was made before the Georgia court acquired jurisdiction of the res, then, of course, the levy was valid and the federal court had jurisdiction for the foreclosure of its perfected lien. Our question, narrowly stated, is whether the state court had acquired jurisdiction of the legacy of Allen, it being the res with which we are here concerned, before the federal tax levy was made. The filing of the creditor's bill created no right, presently enforceable, to take possession of or exercise dominion over the res. The rights of possession and dominion came into existence, if at all, by virtue of the appointment of the Receiver. If, for any one or more of a number of reasons, no receiver had been appointed, the United States would have had a perfected tax lien and a valid levy. Such rights as are the results of a receivership are dependent upon the appointment; before the appointment they are, at most, potential and inchoate. The doctrine of relation back, whatever its effect may be under state law, cannot be invoked to destroy a validly perfected federal tax lien and a levy upon a specific property right. Theory must yield to the realities of the situation and the law of the state must yield to that of the United States. In United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, it was held that an attachment before judgment created only an inchoate lien and a subsequent federal tax levy would not be impaired by the doctrine of relation back upon the entry thereafter of a judgment in the attachment case. The governing principle that an inchoate right cannot defeat a federal tax levy is, we decide, equally applicable to a question of priority of jurisdiction as to a question of priority of lien. See also United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520.

The order dismissing the suit of the United States will be reversed and the cause remanded for further proceedings in keeping with the conclusions here reached.

Reversed and remanded.